Filed 11/24/20

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>GEORGE GONZALEZ,<br><br>    Defendant and Appellant. | D077208<br><br><br>(Super. Ct. Nos. CA276381,<br>M175354CE) |

APPEAL from an order of the Superior Court of San Diego County, Frederick Maguire, Judge.  Affirmed.

Law Office of Matthew S. Koken and Matthew S. Koken for Defendant and Appellant.

Mara W. Elliott, City Attorney, John C. Hemmerling, Assistant City Attorney, and Steven K. Hansen, Deputy City Attorney, for Plaintiff and Respondent.

I.

INTRODUCTION

In May 2014, George Gonzalez pled guilty to two misdemeanor counts of using his premises without a permit or variance (San Diego Mun. Code,

§ 121.0302, subd. (a); counts 1, 4) and one count of maintaining an unauthorized encroachment (San Diego Mun. Code, § 54.0110, subd. (a); count 6).[1]  The trial court placed Gonzalez on probation for three years, subject to various stipulated conditions, including that he "must bring all San Diego Municipal Code violations at all properties owned by or through the Defendant in the City of San Diego (City) into compliance with the San Diego Municipal Code, and take any and all actions to bring such properties into compliance as required by [agencies of the City]."

On five separate occasions thereafter, Gonzalez violated probation.  On each occasion, the court revoked and then reinstated Gonzalez's probation, with terms to which Gonzalez expressly agreed, including stayed terms of custody of increasing lengths.  During a hearing on the third of these violations, Gonzalez agreed to additional specific probation conditions relating to property that he owned on Aldine Drive (Aldine Property). Gonzalez specifically agreed to a probation condition that required that he sell the Aldine Property for fair market value if he failed to comply with various probation conditions mandating that he undertake specified corrective work on the property.  In March 2017, after admitting a fourth probation violation, Gonzalez agreed to an extension of the probationary period to February 2020 and to modify the stayed term of custody to 90 days.

In November 2017, after holding an evidentiary hearing concerning the conditions at the Aldine Property, the trial court found Gonzalez in violation

---

1    Counts 1 and 4 pertained to property that Gonzalez owned on Newtown Avenue (Newtown Property).  Count 1 alleged that Gonzalez unlawfully stored material outdoors and count 4 alleged that Gonzalez maintained an unlawful industrial development without a permit.  Count 6 alleged that Gonzalez unlawfully maintained vegetation obstructing a public right-of-way. The location of the property pertaining to count 6 is not clear from the record.

2

of probation for a fifth time. Gonzalez was again given an opportunity to cure the violations prior to the next hearing in May 2018. When Gonzalez failed to cure the violations by that date, the court again found Gonzalez in violation of probation and ordered Gonzalez to sell the Aldine Property. The trial court also lifted the stay of the 90 days in custody.

On appeal, Gonzalez challenges the order to sell the Aldine Property. In his opening brief, Gonzalez claims that the order to sell the Aldine Property is invalid because it was entered after the expiration of the maximum three-year probation period (Pen. Code, § 1203a)[2] authorized by his May 2014 guilty plea. Gonzalez further argues that the order is invalid because an order directing the sale of real property is not specified as a potential punishment for municipal code violations in the San Diego Municipal Code. Gonzalez also maintains that the order to sell amounts to an unconstitutional taking under the state and federal constitutions. In his reply brief, Gonzalez contends that the order to sell the Aldine Property is an invalid probation condition under *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*).

We conclude that Gonzalez is estopped from challenging the expiration of the probationary term. (See *People v. Jackson* (2005) 134 Cal.App.4th 929 (*Jackson*) [concluding appellant who agreed to extension of probation beyond maximum statutory period in the trial court is estopped from challenging extension on appeal].) We also conclude that the order to sell the Aldine Property is a condition of probation, not a punishment and, as a result, the fact that the San Diego Municipal Code does not provide for the sale of real property as a punishment is irrelevant in determining the validity of the order. We further conclude that Gonzalez's takings claim is without merit.

---

[2]     Unless otherwise specified, all subsequent statutory references are to the Penal Code.

Finally, we conclude that Gonzalez forfeited any challenge to the reasonableness of the probation condition under *Lent* by failing to raise such a challenge in the trial court or in his opening brief on appeal.  Accordingly, we affirm the trial court's order directing the sale of the Aldine Property.[3]

II.

FACTUAL AND PROCEDURAL BACKGROUND

A. *The complaint*

In October 2013, the People filed a misdemeanor complaint charging Gonzalez with six counts of using a premises without a permit or variance in violation of San Diego Municipal Code section 121.0302, subdivision (a) (counts 1–5, 7) and one count of maintaining an unauthorized encroachment in violation of San Diego Municipal Code section 54.0110.[4]

---

[3]    Gonzalez's briefs fail to provide a *single* citation to either the reporter's transcripts or clerk's transcript, in blatant disregard of California Rules of Court, rule 8.204(a)(1)(C), which provides:  "(1) Each brief must:  [¶] . . . [¶] (C) Support any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears.  If any part of the record is submitted in an electronic format, citations to that part must identify, with the same specificity required for the printed record, the place in the record where the matter appears."  (See California Rules of Court, rule 8.360 (a) [briefs in criminal appeals must comply with California Rules of Court, rule 8.204].)

We choose to exercise our authority under California Rules of Court, rule 8.204(e)(2)(C) to disregard such noncompliance, not because Gonzalez's transgressions are minor, but because, as discussed below, Gonzalez's claims are without merit and we do not wish to further delay the proceedings.  (See *Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 113 [lamenting failure to provide adequate record citations, but choosing to disregard noncompliance so as not to further delay the appeal].)

[4]    The complaint specified that the allegations in counts 1 through 5 and count 7 pertained to the Newton Property.  The complaint did not refer to a specific property with respect to count 6.

4

B. *Gonzalez's guilty plea*

In May 2014, Gonzalez pled guilty to two counts of using a premises without a permit or variance (San Diego Mun. Code, § 121.0302, subd. (a); counts 1, 4) and one count of maintaining an unauthorized encroachment (San Diego Mun. Code, § 54.0110; count 6). The plea agreement specified that Gonzalez was subject to a maximum sentence of one year six months in jail.

C. *The trial court's initial grant of probation*

The trial court suspended imposition of sentence and placed Gonzalez on probation subject to various stipulated terms and conditions. While the bulk of the conditions mandated that Gonzalez undertake specific clean up and remediation efforts on the Newtown Property, paragraph No. 13 required that Gonzalez bring all of the properties that he owned within the City into compliance with the municipal code, and paragraph No. 14 required that Gonzalez permit inspectors to access all property owned by Gonzalez within the City upon 24 hours' notice.

D. *Gonzalez's first probation violation*

In August 2014, Gonzalez admitted violating probation. The trial court revoked and reinstated probation with the same terms and conditions.

E. *Gonzalez's second probation violation*

In May 2015, Gonzalez again admitted violating probation. The trial court revoked and reinstated probation with modified stipulated conditions, including the imposition of 30 days of custody, stayed.

F. *Gonzalez's third probation violation and agreement to undertake corrective work on the Aldine Property and to place the Aldine Property for sale if he failed to perform the work*

In September 2015, Gonzalez admitted violating probation for a third time. The trial court revoked and reinstated probation with modified

5

stipulated conditions. The modified stipulated conditions provided, "[Gonzalez] admits violating probation and accepts all of the following terms and conditions of probation to be included with all of his previous terms and conditions of probation," including the imposition of an additional 30 days of stayed custody. The conditions outlined a series of requirements pertaining to the Aldine Property, including removing improperly stored items, removing inoperable vehicles from the yard, obtaining appropriate building permits, and completing corrective work on the property. In addition, the conditions provided:

> "If [Gonzalez] does not obtain all final inspections and approval from [a City agency] for the corrective work required under paragraph 17.g.[5] within 180 days of the date any required permits are issued, [Gonzalez] must place [the] Aldine [Property] for sale to the public within 30 days of that date at a sale price reflecting market value as determined by a licensed appraiser."

Gonzalez and his counsel both signed the document setting forth the stipulated conditions.

---

5    It is clear that the intended reference was to paragraph *18.g.*, which mandated that Gonzalez provide applications and plans for obtaining "permits, inspections, and approvals" for:

> "Removing all structural, electrical, and plumbing/ mechanical work and other development, including the move-on single dwelling and additions, on the [Aldine] Property, **OR** permitting all structural, electrical, and plumbing/mechanical work and other development, including the move-on single dwelling and additions, on the [Aldine] Property in compliance with the San Diego Municipal Code[.]"

G. *Gonzalez's fourth probation violation and agreement to extend the probationary period to February 2020*

In February 2017, the trial court held an evidentiary hearing pertaining to allegations that Gonzalez failed to comply with probation conditions pertaining to the Aldine Property. At the hearing, a City employee testified concerning Gonzalez's failure to timely and appropriately respond to corrections of Gonzalez's applications for building permits pertaining to the Aldine Property. A second City employee testified concerning the condition of the exterior of the Aldine Property as of February 8, 2017. The employee testified that the exterior of the property contained the following items:

> "A portable toilet porta potty, refrigerator, microwave, large spool of rubber hose or some stuff like that. Metal fencing, old sinks, vacuum cleaner, a bunch of items that are non-incidental to the property."[6]

The City employee also testified that photographs of the exterior of the Aldine Property taken at various times prior to February 2017 depicted improperly stored items on the exterior of the property. A long-time neighbor testified that the exterior of the Aldine Property appeared "disheveled and incomplete." The neighbor also described a video of the exterior of the Aldine Property taken in September 2016.[7] Among other conditions, the neighbor stated that the video depicted "debris and old building materials," an

---

[6]     The court admitted photographs of the Aldine Property in evidence. Gonzalez's appellate counsel has not requested transmission of the exhibits to this court. (See Cal. Rules of Court, rules 8.320(e) & 8.224(a).) We remind counsel that it is an appellant's responsibility to have transmitted to this court all exhibits that are necessary to review appellant's claims on appeal.

[7]     The court admitted the exhibit containing the video in evidence. This exhibit also has not been transmitted to this court. (See fn. 6, *ante.*)

7

"unfinished deck," "rusted containers," and an "old abandoned bike." On cross-examination, the neighbor acknowledged that she had been attempting to resolve the issue of the condition of the Aldine Property with the City for four to five years.

Prior to the resolution of the hearing, the parties reached an agreement pursuant to which Gonzalez would admit to violating probation and the court would reinstate probation with modified conditions. In accordance with the parties' agreement, Gonzalez admitted violating paragraph Nos. 18a, 20, and 26 of the conditions of probation, all of which pertained to the Aldine Property. Paragraph No. 18a required that Gonzalez remove improperly stored items from the outside of the property, paragraph No. 20 required that Gonzalez make timely corrections to applications for building permits, and paragraph 26 required timely inspections to ensure "substantial . . . compliance" toward completing the corrective work mandated by paragraph No. 18g of the conditions. (See fn. 5, *ante* (outlining the mandated corrective work).)

In addition, the trial court revoked and reinstated Gonzalez's probation to include the following stipulated modified conditions: a total of 90 days of custody stayed, a requirement that Gonzalez obtain all necessary building permits for the Aldine Property within 45 days, and an extension of probation to February 21, 2020. Gonzalez and his counsel again both signed the document containing the stipulated conditions. The trial court expressed concern with whether it had the authority to extend probation beyond the initial maximum three years and set the matter for further hearing on this issue, stating that it would consider striking the extended term if it lacked the authority to extend Gonzalez's probation. Near the conclusion of the hearing, the following colloquy occurred:

8

"The court: And the one thing I will tell [you], and I just wanted to say, sir, to make sure you understand what you've agreed to. There's 90 days now custody that's been stayed. Previously it was 60. Meaning there's a violation, I've stayed this numerous times, you're agreeing . . . that I would [lift] that stay, and you'd be going to jail for up to 90 days.

"Do you understand that?

"[Gonzalez]: Yes, your Honor.

"The Court: So[,] I'm hopeful that you'll follow the terms and conditions, but one of the reasons I'm keeping this with the status conference is I really want to see this situation taken care of. [¶] There's a number of different things everybody is agreeing to, and I understand to get this property completed to a place that the city is asking, that there's permitting involved and there's a lot involved with that.

"With that being said, just at a basic level, I'm looking at what the witness described as the eyesore of the place, and it appears—I didn't make any findings—but it did appear that there may have been additional violations of the municipal code separate from the conditions of your probation, which would be a violation of probation, meaning that property has got to be put in order I think so the neighbors don't look at it as an eyesore."

At a hearing in March 2017, after receiving a letter with authorities from the People addressing the legality of the extension of the probationary term beyond three years from the initial grant, the trial court maintained the extension of Gonzalez's probation to February 21, 2020.[8] Gonzalez's counsel stated that Gonzalez agreed with the extension of Gonzalez's probationary period.

---

[8] The letter is not in the record.

## H. *Gonzalez's fifth probation violation*

In November 2017, the trial court held another evidentiary hearing on allegations that Gonzalez had violated probation conditions related to the Aldine Property. Two City employees testified concerning Gonzalez's ineffective efforts to obtain required permits for the Aldine Property, as required by the probation conditions. For example, according to a City employee, some of the plans that Gonzalez submitted were "incomplete and illegible," "items that were . . . in the corrections report were not addressed," and Gonzalez had not filed certain required applications, including the engineering building submittal and historic review submittal, as of August 8, 2017. In addition, Gonzalez had not obtained the required permits for the project until the day before the probation hearing.

Gonzalez also testified at the hearing. He stated that the project at the Aldine Property had begun in the 1970s. He explained that, although the project had "been previously permitted," that it was "never finished," and that, as a result, the City considered "it a code violation because it's not a place that's approved to occupy."

At the conclusion of the hearing, the court found Gonzalez in violation of probation. The court stated, "The terms and conditions of the supplemental probation order signed on September 15, 2015, are pretty clear. You were required to submit [proper applications for building permits] within a certain time period and you didn't." The court noted that Gonzalez had now obtained the necessary permitting for the project and stated that Gonzalez would have six months to complete all of the required corrective work and obtain final inspections on the project.[9]

---

[9] The minute order for the hearing states that Gonzalez has "six months to complete all inspections and complete all work," and "all work to be

I.  *The trial court's order to lift the stay of custody and sell the Aldine Property*

On May 25, 2018, the trial court held a final hearing. At the outset of the hearing, the court noted that, at the November 2017 hearing, the court had given "[Gonzalez] an opportunity to get everything taken care of" prior to the May 2018 hearing. Defense counsel acknowledged that Gonzalez had not had a final inspection of the Aldine Property and that Gonzalez was "not at the level that we were hoping he'd be at since the last hearing."

A City employee testified that, since the November 2017 hearing, "no progress or no inspections were made [until] one [inspection] was called two weeks ago." The court found Gonzalez in violation of probation, ordered execution of the previously-stayed 90-day sentence, and ordered Gonzalez to sell the Aldine Property pursuant to the conditions of probation to which Gonzalez had previously agreed.

That same day, the court issued a written order directing the sale of the Aldine Property. The order states in relevant part:

> "Under the Code Enforcement Case Plea Bargain Agreement, Additional Terms and Conditions of Probation paragraph number 25, imposed by the Court on February 21, 2017, this Court **HEREBY ORDERS THAT:**
> "1. Effective Sixty (60) days from the date of this Order, [Gonzalez] shall enter into a listing agreement with a licensed real estate agent or broker to sell [the] Aldine [Property]."

completed and all work to be inspected by next hearing date of May 25, 2018."

11

The order further specifies a series of conditions pertaining to the sale including that, "The purchase price[10] for the [Aldine Property] shall not be more than 3 percent above area comparable properties."

J. *Gonzalez's appeal to the appellate division of the superior court*

In June 2018, Gonzalez appealed from the May 25 order to sell the Aldine Property to the Appellate Division of the San Diego County Superior Court.

While Gonzalez's appeal in the appellate division was pending, that court requested supplemental briefing on the following question:

> "Was the order to sell the Aldine Drive property in excess of the court's jurisdiction? [Citations.] Does estoppel apply? [Citation.]"

Gonzalez filed a supplemental brief in which he argued that his probationary period should have expired on May 7, 2017, and that the trial court had erred in extending probation beyond that date. Gonzalez further maintained that he was not estopped from raising this argument. In January 2020, the appellate division ordered the trial court to vacate its May 25 order directing the sale of the Aldine Property. The appellate division concluded:

> "An order to sell the property was not contemplated by the [L]egislature as a punishment for such petty misdemeanor offenses. Sale of the property is not mandated by the statute enacted [by] the San Diego City Council nor is it provided for as a remedy for violations of the Land

---

10    The remainder of the order makes it clear that the court used the term "purchase price" to mean "listing price." For example, another portion of the order states, "If [Gonzalez] and his licensed real estate agent or broker fail to enter into a Residential Real Estate Purchase Agreement with a Buyer within 60 calendar days from the date of this Order or from the date of a sale cancelation; then [Gonzalez] and his licensed real estate agent or broker shall reduce the *purchase price* by 1 percent every month thereafter until the [Aldine Property] sells." (Italics added.)

12

Development Code.  Here, the plea bargain purported to authorize the court to exercise a power it does not have under California's sentencing provisions or under the comprehensive statutory scheme regarding eminent domain.  The order to sell the real estate, as a condition of probation, was contrary to the law."

The appellate division further concluded:

"The Order directing the forced sale of the residential property on Aldine Drive for violations of probation for petty offenses related to the Newton Avenue property constitutes a taking of private property by a government entity and therefore must be pursuant to the eminent domain statutes and not by a court order in a criminal misdemeanor action."

K.  *This court's transfer of the matter for hearing and decision*

In March 2020, this court, on its own motion, transferred the matter for hearing and decision.  (See Cal. Rules of Court, rule 8.1002 ["A Court of Appeal may order a case transferred to it for hearing and decision if it determines that transfer is necessary to secure uniformity of decision or to settle an important question of law.  Transfer may be ordered on:  [¶] . . . [¶] (3) The Court of Appeal's own motion"].)[11]

III.

DISCUSSION

A.  *Gonzalez is estopped from challenging the extension of the probationary period beyond the three-year period established by section 1203a*

Gonzalez claims that the trial court's order to sell the Aldine Property is invalid because the trial court issued the order to sell after the expiration

---

[11]  Upon such transfer, "[W]e review the trial court's order independently of the appellate division's opinion." (*People v. Noriega* (2004) 124 Cal.App.4th 1334, 1339.)

13

of the original maximum three-year probationary period specified in section 1203a, and the trial court's extension of the three-year period was invalid.

1. *Governing law*

    a. *The three-year maximum period of probation*

Section 1203a provides:

> "In all counties and cities and counties [*sic*] the courts therein, having jurisdiction to impose punishment in misdemeanor cases, shall have the power to refer cases, demand reports and to do and require all things necessary to carry out the purposes of Section 1203 of this code insofar as they are in their nature applicable to misdemeanors.[12]  Any such court shall have power to suspend the imposing or the execution of the sentence, and *to make and enforce the terms of probation for a period not to exceed three years*; provided, that when the maximum sentence provided by law exceeds three years imprisonment, the period during which sentence may be suspended and terms of probation enforced may be for a longer period than three years, but in such instance, not to exceed the maximum time for which sentence of imprisonment might be pronounced."  (Italics added.)

Where the maximum sentence provided by law in a misdemeanor case does not exceed three years,[13] a trial court may not extend probation beyond three years.  (See *People v. Ottovich* (1974) 41 Cal.App.3d 532, 534 ["Appellant was originally granted probation on November 18, 1970.

---

12    Section 1203 specifies the manner by which a trial court may grant probation.

13    It is undisputed that the maximum sentence for the three misdemeanor offenses to which Gonzalez pled guilty was less than three years.

Therefore, the maximum duration for probation would be three years from that date.  Extension beyond that period was error."].)

 b. *Estoppel*

In *Jackson, supra*, 134 Cal.App.4th at page 933, the Court of Appeal concluded that a defendant who had consented to the extension of a probationary period beyond the statutory maximum in the trial court was estopped from challenging the legality of the extension on appeal.[14]  The *Jackson* court reasoned in part:

> "[I]n this case, appellant asked the trial court on November 23, 1999 to extend her term of probation through November 23, 2004.  Although the court erred by acquiescing in her request, appellant is estopped from now challenging the order.  To hold otherwise would permit appellant to trifle with the courts and the probation system by leading the trial court into error, obtaining the benefit of the court's error by avoiding incarceration, and then exploiting on appeal the error she induced the trial court to commit."  (*Jackson, supra*, 134 Cal.App.4th at p. 933, fn. omitted.)

In *People v. Ford* (2015) 61 Cal.4th 282, 288 (*Ford*), the California Supreme Court noted that in *Jackson*, the "defendant was estopped from challenging [the] court's jurisdiction to impose a probationary term exceeding the statutory maximum by requesting the extension."  The *Ford* court relied on the *Jackson* court's estoppel analysis in concluding that a defendant was estopped from challenging the holding of a restitution hearing after his probationary term had expired.  (*Ford*, at p. 285.)  The *Ford* court reasoned,

_____

14    The *Jackson* court also concluded that the defendant's failure to timely appeal from the November 1999 order extending the period of probation precluded the defendant from challenging the extension in an appeal filed in November 2004.  (*Jackson, supra*, 134 Cal.App.4th at p. 932 ["the 1999 extension is beyond challenge at this time, as appellant did not timely appeal from that order"].)

15

"By agreeing to a continuance of the restitution hearing to a date after his probationary term expired, defendant impliedly gave his consent to the court's continued exercise of jurisdiction." (*Ibid.*)

### 2. *Factual and procedural background*

The trial court initially placed Gonzalez on probation in May 2014.

On February 21, 2017, before the conclusion of a contested probation revocation evidentiary hearing, Gonzalez entered into an agreement with the People to modify the terms and conditions of his probation. The agreement stated in relevant part, "Defendant's probation is extended to February 21, 2020."

At a March 24, 2017 hearing, the court extended Gonzalez's probation to February 21, 2020, in accordance with the parties' stipulation. At the hearing, Gonzalez's counsel expressly agreed to the extension, stating, "We're not objecting, Your Honor. It's part of an agreement that we made with the People."[15]

### 3. *Application*

Given Gonzalez's express stipulation to the extension of the probationary period to February 21, 2020, he is estopped from challenging the legality of the extension in this appeal. (*Jackson, supra,* 134 Cal.App.4th at p. 933; accord *Ford, supra,* 61 Cal.4th at p. 288.) Gonzalez fails to present any argument to the contrary in either his opening brief or in reply.[16]

---

[15] As noted in part II.G, *ante*, Gonzalez signed a document containing the stipulated extension of probation.

[16] In their respondent's brief, the People argued that Gonzalez is estopped from challenging the trial court's extension of his probationary period.

Accordingly, we conclude that Gonzalez is estopped from challenging the extension of the probationary period beyond the three-year period established by section 1203a.[17]

B. *Gonzalez is not entitled to reversal of the order to sell the Aldine Property on the ground that an order directing the sale of real property is not an authorized punishment for code violations under the San Diego Municipal Code*

Gonzalez argues that the court's order directing the sale of the Aldine Property is invalid because an order directing the sale of real property is not among the "variety of penalties for code enforcement violations," specified in the San Diego Municipal Code.[18] This argument fails for the fundamental reason that the trial court's order to sell the property was *not* a legislatively mandated *punishment*, but rather, was a *condition of probation*.

---

[17] In light of our conclusion that Gonzalez is estopped from challenging the extension of the probationary period, we need not consider the People's contention that the trial court's extension of the three-year period was proper under section 1203.2, subdivision (c), which provides in relevant part, "Upon any revocation and termination of probation the court may, if the sentence has been suspended, pronounce judgment for any time within the longest period for which the person might have been sentenced."

Nor need we consider the impact of Gonzalez's failure to appeal from the March 24, 2017 order extending Gonzalez's probationary term. (See fn. 14, *ante*.)

[18] This argument echoes the primary reason that the appellate division gave for reversing the trial court's order. In its decision, the appellate division stated, "[N]one of the remedies provided for by Municipal Code included the court-ordered sale of the real property as a possible punishment for such petty offenses." The appellate division also stated, "Sale of the property is not mandated by the statute enacted the San Diego City Council nor is it provided for as a remedy for violations of the Land Development Code."

The validity of conditions of probation are not spelled out in statutes (or municipal codes), and it is well established that a probation condition may be valid even if it " 'requires or forbids conduct which is not itself criminal.' " (*In re Ricardo P.* (2019) 7 Cal.5th 1113, 1118 (*Ricardo P.*).) Thus, a defendant is not entitled to reversal of an order imposing a probation condition merely because the condition is not a legislatively specified punishment for violation of a criminal law. Rather, a defendant must establish either that the probation condition violates case law requiring that a trial court impose only " 'reasonable' " probation conditions (see *id.* at p. 1128 ["A probation condition that imposes substantially greater burdens on the probationer than the circumstances warrant is not a 'reasonable' one."])[19] or the defendant must demonstrate that the condition is "unconstitutionally overbroad." (*Ricardo P.* at p. 1118, quoting *In re Sheena K.* (2007) 40 Cal.4th 875, 890.)[20] Thus, as the People argue in their brief, "it is irrelevant that the [San Diego Municipal Code] does not specify sale of a property as a punishment for criminal violations."

Accordingly, we conclude that Gonzalez is not entitled to reversal of the order to sell the Aldine Property on the ground that an order directing the sale of real property is not an authorized punishment for code violations under the San Diego Municipal Code.[21]

---

[19]    In part III.D, *post*, we conclude that Gonzalez forfeited such a challenge.

[20]    In part III.C, *post*, we consider Gonzalez's constitutional challenge to the order directing the sale of his property.

[21]    Gonzalez also argues that the trial court acted "outside the Court's jurisdiction," in September 2015 when it added conditions relating to the

C. *Gonzalez has failed to establish any violation of the takings clauses of the federal or state constitutions*

Gonzalez claims that the trial "[c]ourt's order to sell the real property constitutes a taking," under the federal and state constitutions. (U.S. Const., 5th Amend.; Cal. Const., art. I, § 19.)

1. *Gonzalez failed to raise any constitutional claim in the trial court and therefore may raise only a facial constitutional challenge on appeal*

In *People v. Patton* (2019) 41 Cal.App.5th 934 (*Patton*), this court explained that constitutional challenges to probation conditions must ordinarily be brought in the trial court, unless the challenge constitutes a facial challenge, which may be brought for the first time on appeal:

> "The People argue Patton forfeited his overbreadth challenge by failing to raise it before the trial court. An as-applied constitutional challenge is forfeited unless previously raised. [Citation.] ' "The purpose of this rule is to encourage parties to bring errors to the attention of the

Aldine Property because there had not been any "change of circumstance from the original plea."

We reject this argument because there clearly was a change of circumstances between the time of the plea in May 2014 and the imposition of the conditions pertaining to the Aldine Property in September 2015, namely, Gonzalez had *thrice* admitted to violating probation—in August 2014, in May 2015, and in September 2015. (See pt. II, *ante*.) Thus, Gonzalez is not entitled to reversal of the order to sell on the ground that there had been no change of circumstances since Gonzalez's initial plea. Gonzalez's argument to the contrary is frivolous. The record does not indicate the reason for the addition of specific conditions pertaining to the Aldine Property in September 2015. However, as noted in part I, *ante*, in May 2014, Gonzalez agreed to "bring all San Diego Municipal Code violations at all properties owned by or through the Defendant in the City of San Diego into compliance with the San Diego Municipal Code, and take any and all action to bring such properties into compliance as required by [agencies of the City]."

19

trial court, so that they may be corrected." ' [Citation.] However, the forfeiture rule does not extend to facial constitutional challenges presenting pure questions of law that can be resolved without referring to the particular sentencing record developed below." (*Id.* at p. 946.)

The *Patton* court also explained the nature of a facial challenge:

"A facial challenge 'does not require scrutiny of individual facts and circumstances but instead requires the review of abstract and generalized legal concepts.' [Citation.] The claim is that a condition cannot have *any* valid application, without relying on any facts in the sentencing record. [Citation.]" (*Patton, supra,* 41 Cal.App.5th at p. 944.)

Gonzalez failed to raise any constitutional challenge in the trial court to the order to sell the Aldine Property. Thus, Gonzalez may raise only a facial constitutional challenge on appeal. (See *Patton, supra,* 41 Cal.App.5th at p. 946.)

2. *Gonzalez has failed to establish that a judicial order to sell property as a condition of probation constitutes a facial violation of the takings clauses of the federal or state constitutions*

a. *Governing law*

i. *Facial challenges to probation conditions*

"[A] facial overbreadth challenge is difficult to sustain." (*Williams v. Garcetti* (1993) 5 Cal.4th 561, 577.) This is because "[i]nherent in the very nature of probation is that probationers 'do not enjoy "the absolute liberty to which every citizen is entitled." ' " (*United States v. Knights* (2001) 534 U.S. 112, 119.)

ii. *Takings law*

"The takings clause of the Fifth Amendment [of the federal constitution] prohibits a governmental entity from taking private property for public use without just compensation." (*City of Perris v. Stamper* (2016)

20

1 Cal.5th 576, 591; U.S. Const., 5th Amend. ["nor shall private property be taken for public use, without just compensation"].)

California Constitution, article I, section 19, subdivision (a) provides in relevant part:

> "Private property may be taken or damaged for a public use and only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner."

"The United States Supreme Court has defined a facial takings claim as an 'uphill battle' and 'difficult' to demonstrate." (*Action Apartment Assn. v. City of Santa Monica* (2008) 166 Cal.App.4th 456, 468.) The party asserting a facial takings claim must demonstrate that the governmental action constitutes a taking. (*Ibid.*)

b. *Application*

Gonzalez argues that trial court's order to sell the Aldine Property constitutes an unconstitutional taking because the court-ordered forced sale of the property is a taking of private property and takings of private property can be effectuated *only* through California's eminent domain law.[22] Even if construed as a facial challenge, it is clear that Gonzalez's argument falls far short of demonstrating that the trial court's order is facially invalid.

As the People point out in their brief, judicial action may result in a person ceasing to own private property for any number of lawful reasons entirely outside of the eminent domain law. For example, marital dissolution proceedings, judgment enforcement actions, nuisance abatement proceedings, and forfeiture proceedings all may result in divesting a person of his or her private property. None of these proceedings involve eminent domain law. As

_____

[22] Gonzalez's argument in this regard is nearly identical to the appellate division's takings analysis.

21

the proponent of the constitutional violation, it is Gonzalez's burden to demonstrate that a probation condition mandating the sale of real property is not lawful. Gonzalez's contention that the divestiture of private property did not occur pursuant to the eminent domain law fails to make such a showing.

Gonzalez failed to present any authority pursuant to which a court has found a taking under similar circumstances. That is, Gonzalez has presented no case in which an order to sell property for full market value has been found to constitute a taking, particularly where the order was entered pursuant to a condition to which the owner expressly agreed. Gonzalez also failed to present any argument grounded in takings law arising under the state or federal constitutions, beyond the argument that we reject *ante*. Further, even assuming that there could be a court order to sell property so disproportionate in relation to the magnitude of the probation violation at issue in the case that it would violate the takings clauses of the state or federal constitutions,[23] Gonzalez has failed to establish that a probation order requiring a probationer to sell real property for fair market value is invalid in *every* instance. Because such a showing is required in order for Gonzalez to prevail on his facial constitutional challenge, Gonzalez is not entitled to reversal. (See *Patton, supra*, 41 Cal.App.5th at p. 944 [to establish that probation condition is facially invalid the "condition cannot have *any* valid application"].)

_____

[23] As noted in part III.C.1, *ante*, Gonzalez forfeited his as applied takings challenge in this case by failing to raise a constitutional challenge in the trial court. In so stating, we in no way intend to suggest that Gonzalez would have prevailed on an as applied challenge to the trial court's order in this case, given the factual and procedural circumstances outlined in part II, *ante*, pertaining to the Aldine Property.

Accordingly, we conclude that Gonzalez is not entitled to reversal of the trial court's order to sell the Aldine Property on the ground that the order is facially constitutionally invalid as violating the takings clauses of the state and federal constitutions.

D. *Gonzalez forfeited his claim that the trial court's order to sell the Aldine Property is unreasonable under* Lent

In his reply brief, citing *Lent*, *supra*, 15 Cal.3d at page 486, Gonzalez claims that the trial court "did not have authority to order the sale of [the Aldine Property] as a condition of probation." (Italics and capitalization omitted.)

In *Lent*, the California Supreme Court held that "a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality." (*Lent*, *supra*, 15 Cal.3d at p. 486; see also *Ricardo P.*, *supra*, 7 Cal.5th at p. 1116 [concluding that electronics search probation condition was "not reasonably related to future criminality and is therefore invalid under *Lent*," where there was no indication that probationer "had used or will use electronic devices in connection with . . . any illegal activity"].)

It is well established that a defendant may not raise a *Lent* challenge for the first time on appeal. (See *People v. Welch* (1993) 5 Cal.4th 228, 237 ["We therefore hold that failure to timely challenge a probation condition on . . . [']*Lent'* grounds in the trial court waives the claim on appeal."].) It is also well established that arguments may not ordinarily be raised on appeal for the first time in a reply brief. (*People v. Taylor* (2020) 43 Cal.App.5th 1102, 1114 ["In his reply brief, Taylor raises other arguments for the first time. Taylor has forfeited these tardy arguments."].)

23

Gonzalez did not raise a *Lent* challenge in the trial court[24] nor did he do so in his opening brief on appeal. We therefore conclude that Gonzalez's claim in reply that the trial court's order to sell the Aldine Property is unreasonable under *Lent* is forfeited.[25]

---

[24] Gonzalez not only failed to object to the initial September 2015 probation condition authorizing an order to sell the Aldine Property if he failed to satisfy certain conditions, he expressly agreed to the condition authorizing such an order pursuant to a written stipulation. In addition, Gonzalez raised no *Lent* objection in May 2018 when the court ordered the sale of the Aldine Property due to Gonzalez's failure to satisfy the written conditions specified in the September 2015 probation condition.

[25] We emphasize that in light of Gonzalez's forfeiture of his *Lent* objection we have no occasion to consider, on the merits, the reasonableness of the order directing the sale of Gonzalez's real property. We also observe that this court would expect forced sales of real property as a condition of probation to be rare, and that the reasonableness and constitutionality of such orders would depend on a variety of factors, including the seriousness and number of violations as well as a careful examination of the full record pertaining to such issues. However, in light of Gonzalez's failure to raise either a *Lent* or constitutional objection in the trial court, this court is unable to undertake such a review in this appeal.

IV.

DISPOSITION

The order requiring Gonzalez to sell the Aldine Property is affirmed.


AARON, J.

WE CONCUR:


BENKE, Acting P. J.


DATO, J.